## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CRIMINAL ACTION NO. 3:17-CR-68-DJH-2

**ROMAN L. BROWN, JR.,**                                                    **Movant/Defendant.**

**v.**

**UNITED STATES OF AMERICA,**                                        **Respondent/Plaintiff,**

### REPORT AND RECOMMENDATION

This matter is before the Court on a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") filed by Movant/Defendant Roman L. Brown, Jr. ("Brown"). (DN 226.) This matter is referred to the undersigned for "rulings on all non-dispositive motions; for appropriate hearings, if necessary; and for findings of fact and recommendations on any dispositive matter." (DN 237.) The United States filed a response in opposition (DN 243), and Brown filed a reply (DN 244). Brown also filed a Motion to Supplement (DN 247), which the Court granted. (DN 249.) The United States filed a response to Brown's supplement. (DN 250.) Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned **RECOMMENDS** that Brown's § 2255 Motion be **GRANTED IN PART** and **DENIED IN PART** as set forth below.

### I.    FINDINGS OF FACT

On May 10, 2017, Brown was indicted on two counts of being a prohibited person in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) ("Count 4" and "Count 5"); one count of threatening to assault a Federal law enforcement officer in violation of 18 U.S.C. §§ 115(a)(1)(B), (b)(4) ("Count 6"); one count of threatening to kill a Federal law enforcement officer in violation of 18 §§ U.S.C. 115(a)(1)(B), (b)(4) ("Count 7"); and one count of threatening to assault the family of a Federal law enforcement officer in violation of 18 U.S.C. §§ 115(a)(1)(A),

115(b)(4) ("Count 8").  (DN 8.)  The firearms charges stemmed from possession of two separate

firearms.  (*Id.* at PageID # 16.)  The Court appointed the Office of the Federal Defender to represent

Brown (DN 20), and attorney Donald J. Meier ("Meier") entered an appearance on Brown's behalf.

(DN 23.)

        On September 25, 2017, Brown entered an open guilty plea pursuant to Fed. R. Crim. P.

11(a)(1) to all five counts with which he was charged.  (DN 36.)  Prior to accepting Brown's plea,

then-presiding Senior District Judge Thomas B. Russell ("Judge Russell") conducted a plea

colloquy with Brown.  (DN 64.)  In doing so, Judge Russell confirmed that it was Brown's decision

to plead guilty:

| The Court: | And is it your intent to plead guilty to those charges today? |
|---|---|
| Brown: | Yeah. |
| The Court: | Are you doing that because you want to and you think that's the best thing? |
| Brown: | Yeah |
| . . . | |
| The Court: | Do you understand that you have the right to plead not guilty, and you don't have to plead guilty today unless that is what you want to do? |
| Brown: | Yes, sir. |

(*Id.* at 299, 302.)  Judge Russell also inquired as to whether Brown had had sufficient time to

consult with his attorney:

| The Court: | Mr. Brown, have you had an ample opportunity to discuss this case with Mr. Meier? |
|---|---|
| Brown: | Yeah |
| The Court: | Are you fully satisfied with the advice he's given you? |

Brown:          Yeah.

(*Id.* at 300.)  Judge Russell confirmed that Brown and Meier had discussed the application of the

Sentencing Guidelines, as well as sentencing generally:

> The Court:     Have you talked to your attorney about the advisory sentencing guidelines and how they may apply to this case?
>
> Brown:         Yes, sir.
>
> The Court:     Do you understand the court is the party that will determine what your advisory sentencing guidelines should be?
>
> Brown:         Yes, sir.
>
> The Court:     Do you understand under some circumstances the court may impose a penalty that is more severe or less severe than a sentence called for by the advisory sentencing guidelines?
>
> Brown:         Yes, sir.
>
> . . .
>
> The Court:     Do you understand, if I do not accept the sentencing recommendation called for by your plea agreement – excuse me. You don't have a plea agreement. Do you understand that if you do not receive a sentence to which you expect in this matter, you still will not have a right to withdraw your plea? No –
>
> (Defendant conferring with Mr. Meier off the record.)
>
> Brown:         Yes, sir.
>
> The Court:     Okay. Do you understand no one can make a promise that binds the court? In other words, your attorney or anybody else can't make a promise to you that's going to – that binds me to do what they say. Do you understand that?
>
> Brown:         Yes, sir.

(*Id.* at 305-06.)  Judge Russell asked the United States to outline the maximum penalties for the

charges to which Brown was to plead guilty, Brown's counsel confirmed the United States had

correctly done so, and in response to a question from the Court, Brown testified that he understood both the charges and the maximum penalties for them. (*Id.* at 303-04.) In response to questioning from the Court, Brown then admitted that he did the things with which he was charged. (*Id.* at 306-09.) In particular, Brown admitted that he had been "previously convicted of [a] felony in Jefferson Circuit Court . . . of trafficking in a controlled substance." (*Id.* at 307.)

Judge Russell accepted Brown's guilty pleas at the conclusion of the hearing. (*Id.* at 309-310; DN 36.) Then, on January 24, 2018, Judge Russell sentenced Brown to 110 months each as to Counts 4, 5, and 7, and 72 months each as Counts 6 and 8, all to be served concurrently for a total term of imprisonment of 110 months. (DN 125; DN 126, at PageID # 580.) The Court also directed Brown to pay special assessments totaling $500, $100 for each count to which he pled. (*Id.* at 584; DN 64, at PageID # 305.) Brown did not file a direct appeal.

Brown filed the instant § 2255 Motion on February 4, 2019. (DN 226.)

## II.  CONCLUSIONS OF LAW

### A.  Legal Standard

#### 1.  Standard of Review for § 2255 Motion

A federal prisoner seeking relief under 28 U.S.C. § 2255 "must allege one of three bases as a threshold standard: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *United States v. Doyle*, 631 F.3d 815, 817 (6th Cir. 2011) (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001)). To prevail on a § 2255 motion alleging constitutional error, the movant must show that the error had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009). To prevail on a §

4

2255 motion alleging non-constitutional error, the movant must show a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error that violated due process. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999); *Wright v. United States*, 182 F.3d 458, 463 (6th Cir. 1999). The movant must sustain his allegations by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

The Sixth Circuit has consistently held that a § 2255 motion may not be used to re-litigate an issue that was raised on appeal absent highly exceptional circumstances, such as an intervening change in the law. *DuPont v. United States*, 76 F.3d 108, 110 (6th Cir. 1996). Additionally, "[w]here a defendant has procedurally defaulted on a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citing *Murray v. Carrier*, 477 U.S. 478, 485, 496 (1986), *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), and *Smith v. Murray*, 477 U.S. 527, 537 (1986)). Notably, under the cause and prejudice test, "cause" must be something that cannot be fairly attributed to the movant. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

### 2.    Standard for Ineffective Assistance of Counsel Claim

Claims of ineffective assistance of counsel are properly brought in a § 2255 Motion. *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003). The Sixth Amendment entitles a defendant not only to counsel but to counsel that is reasonably effective. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A claim of ineffective assistance of counsel requires the defendant to show that (1) counsel's performance was deficient and (2) that the deficiency prejudiced him. *Id.* Conclusory allegations or bare bones statements regarding counsel's effectiveness fall short of meeting that burden. *See Elzy v. United States*, 205 F.3d 882, 886 (6th Cir. 2000) (finding that

"conclusory statement" by petitioner was "wholly insufficient to raise the issue of ineffective assistance of counsel").

To satisfy the first prong of the *Strickland* test, the defendant must "show[] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  Counsel's performance is deficient if it fell below an "objective standard of reasonableness" based on "prevailing professional norms." *Id.* at 688.  A defendant asserting a claim of ineffective assistance must, consequently, "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The Court is required to evaluate the objective reasonableness of counsel's performance "from counsel's perspective at the time of the alleged error and in light of all the circumstances." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).  "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689; *see id.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)) ("Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'").

Under the second *Strickland* prong, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*  Where a defendant has entered a guilty plea, the "prejudice" prong focuses on "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  In this context, "in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable

6

probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*; *see also Warner v. United States*, 975 F.2d 1207, 1214 (6th Cir. 1992) ("Prejudice is proved if the defendant shows a reasonable probability that, but for counsel's defective advice, he would not have pleaded guilty.").

### B.      Brown's Grounds for Relief

Brown raised two grounds for relief in his initial § 2255 Motion and later supplemented his motion with a third ground.  (DNs 226, 247.)  Brown argued that (1) his counsel was ineffective during the plea process by erroneously informing him of the wrong maximum penalty; (2) his counsel was ineffective during the plea process by erroneously informing him as to his guidelines range and the potential sentence he would receive; and (3) his § 922(g) convictions are unconstitutional based on the Supreme Court's recent ruling in *Rehaif v. United States*, 139 S. Ct. 2192 (2019).  (*Id.*)  The undersigned will address each of Brown's arguments below.

### 1.      Ineffective Assistance – Maximum Penalty

Brown argued that his counsel was ineffective in advising him about his guilty plea because counsel advised him of the wrong statutory maximum for his plea.  (DN 226-1, at PageID # 1155-56.)  He represented in the declaration attached to his § 2255 Motion that counsel advised him that the maximum penalty he could face was forty-two years imprisonment.  (*Id.* at 1162.)  He contended that this was incorrect because he could not be convicted of both Counts 4 and 5, the two felon in possession counts, and Counts 6, 7, 8, the violations of 18 U.S.C. § 115(a)(1)(A)-(B), because multiple felon in possession convictions as well as multiple 18 U.S.C. § 115 convictions would violate double jeopardy and the United States Supreme Court precedent set forth in *Blockburger v. United States*, 284 U.S. 299 (1932).  (*Id.* at 1156-57.)  The undersigned will address Brown's arguments as to each separate set of counts individually.

7

### a)  Counts 6, 7, 8 – 18 U.S.C. § 115(a)

Brown contended that his "single threat" was not sufficient to sustain three convictions for violations of 18 U.S.C. § 115 and that, thus, his conviction on those three counts violated the double jeopardy clause.  (*Id.* at 1156.)  He argued that his counsel performed deficiently in the plea process by not informing him that he could not be convicted of Counts 6, 7, and 8 individually and allowing Brown to "proceed[ ] under a false pretense to the maximum penalty [he] faced."  (*Id.* at 1157.)  The merits of Brown's double jeopardy argument are instructive as to whether his counsel performed deficiently.

The Fifth Amendment's Double Jeopardy clause prohibits both multiple punishments for the same offense and successive prosecutions for the same offense after acquittal or conviction. *See* U.S. Const. amend. V; *Costo v. United States*, 904 F.2d 344, 346 (6th Cir. 1990) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).  While Brown urged the Court to proceed straight to *Blockburger*, in assessing a claim that multiple punishments have been imposed in violation of the Double Jeopardy clause, a court must first determine "whether Congress intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980) (quoting *Jeffers v. United States*, 432 U.S. 137, 155 (1977)).  "To determine the congressional intent it is necessary to examine the statutory language and the legislative history, as well as to utilize other techniques of statutory construction." *Id.*  (citing *Whalen v. United States*, 445 U.S. 684, 690 (1980)).  Brown did not argue or present any evidence that either the statutory language or legislative history of 18 U.S.C. § 115 supported his argument.  The United States also did not argue that either the statutory language or legislative history of 18 U.S.C. § 115 demonstrated that Congress intended to authorize multiple punishments.  The undersigned likewise finds that it is

not clear from the face of 18 U.S.C. § 115 or its legislative history whether Congress intended to authorize multiple punishments under the statute.

Where congressional intent is unclear or cannot be discerned, to evaluate whether multiple punishments have been imposed in violation of the double jeopardy clause, the Court must analyze the elements of the two crimes according to the test established by the Supreme Court in *Blockburger v. United States* to determine whether "each [offense] requires proof of a fact [that] the other does not." *Blockburger*, 284 U.S. at 304.  However, "[u]sing the same evidence to prove violations of two statutes does not violate *Blockburger*." *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008).  Further, in determining whether the *Blockburger* is satisfied, the Court should "go further and look to the legal theory of the case or the elements of the specific criminal cause of action for which the defendant was convicted without examining the facts in detail." *Pandelli*, 635 F.2d at 538.

18 U.S.C. § 115(a)—the statute at issue in Counts 6, 7, and 8—provides as follows:

(a)(1) Whoever—

> (A) assaults, kidnaps, or murders, or attempts or conspires to kidnap or murder, or threatens to assault, kidnap or murder a member of the immediate family of a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under section 1114 of this title; or
>
> (B) threatens to assault, kidnap, or murder, a United States official, a United States judge, a Federal law enforcement officer, or an official whose killing would be a crime under such section,

with intent to impede, intimidate, or interfere with such official, judge, or law enforcement officer while engaged in the performance of official duties, or with intent to retaliate against such official, judge, or law enforcement officer on account of the performance of official duties, shall be punished as provided in subsection (b).

18 U.S.C. § 115(a).  As 18 U.S.C. § 115(a) contains a number of alternative elements, this Court must look to the specific criminal causes of action with which Brown was charged to determine which particular elements are at issue here.  *Pandelli*, 635 F.2d at 538.

Count 6 of the Indictment charged a violation of 18 U.S.C § 115 as follows:

On or about April 12, 2017, in the Western District of Kentucky, Jefferson County, Kentucky, ROMAN L. BROWN, JR., did threaten to assault C. S., a member of the LOUISVILLE METRO INTEL ("LMINTEL") Joint Task Force, with intent to impede, interfere, intimidate and retaliate against C. S. while he was engaged in the performance of his official duties.

(DN 8, at PageID # 17.)  Based on this charge, the operative elements in 18 U.S.C. § 115(a) for Count 6 of the indictment are: (1) a threat of assault, (2) against a Federal law enforcement officer, (3) with intent to impede, intimidate, interfere with, or retaliate against that law enforcement officer while he or she was engaged in the performance of his or her official duties.  18 U.S.C. § 115(a)(1)(B).[1]

Count 7 of the Indictment charged a violation of 18 U.S.C. § 115 as follows:

On or about April 12, 2017, in the Western District of Kentucky, Jefferson County, Kentucky, ROMAN L. BROWN, JR., did threaten to kill C. S., a member of the LOUISVILLE METRO INTEL ("LMINTEL") Joint Task Force, with intent to impede, interfere, intimidate and retaliate against C. S. while he was engaged in the performance of his official duties.

(DN 8, at PageID # 17.)  Based on this charge, the operative elements in 18 U.S.C. § 115(a) for Count 7 of the indictment are: (1) a threat to kill, (2) a Federal law enforcement officer, (3) with intent to impede, intimidate, interfere with, or retaliate against that law enforcement officer while he or she was engaged in the performance of his or her official duties.  18 U.S.C. § 115(a)(1)(B).

Count 8 of the Indictment charged a violation of 18 U.S.C. § 115 as follows:

---

[1] Brown argued that the Sixth Circuit had elucidated the elements of 18 U.S.C. § 115 in *United States v. Vincent*, 681 F.2d 462, 464 (6th Cir. 1982).  However, *Vincent* is distinguishable because it addressed 18 U.S.C. §§ 111, 114, and 871(a), not § 115.  *Id.* at 463.

> On or about April 12, 2017, in the Western District of Kentucky, Jefferson County, Kentucky, ROMAN L. BROWN, JR., did threaten to assault a member of the immediate family of C. S., a member of the LOUISVILLE METRO INTEL ("LMINTEL") Joint Task Force, with intent to impede, interfere, intimidate and retaliate against C. S. while he was engaged in the performance of his official duties.

(DN 8, at PageID # 17.)  Based on this charge, the operative elements in 18 U.S.C. § 115(a) for Count 8 of the indictment are: (1) a threat of assault, (2) against a member of the immediate family of a Federal law enforcement officer, (3) with intent to impede, intimidate, interfere with, or retaliate against that law enforcement officer while he or she was engaged in the performance of his or her official duties.  18 U.S.C. § 115(a)(1)(A).

In comparing the particular elements at issue for Counts 6, 7, and 8, the undersigned concludes that each contains proof of an element the other does not.  Count 6 requires proof of a threat of assault whereas Count 7 requires proof of a threat to kill.  Count 6 requires proof the threat of assault was directed at a Federal law enforcement officer whereas Count 8 requires proof the threat of assault was directed at a member of the immediate family of a Federal law enforcement officer.  Count 7 requires proof of a threat to murder a Federal law enforcement officer whereas Count 8 requires proof of a threat to assault a member of the immediate family of a Federal law enforcement officer.  Therefore, *Blockburger* was not violated, and Brown's convictions for Counts 6, 7, and 8 did not offend the double jeopardy clause.  Brown's counsel did not perform deficiently by failing to give Brown incorrect legal advice or to make a meritless legal argument.  *See Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("Counsel was not required to raise meritless arguments to avoid a charge of ineffective assistance of counsel."). Further, Brown has not demonstrated any prejudice from his counsel's failure to make a meritless argument, nor could he do so.  Therefore, the undersigned will recommend Brown's § 2255 Motion

11

be denied as to his ineffective assistance of counsel argument regarding the maximum penalty for Counts 6, 7, and 8.

### b)        Counts 4, 5 – 18 U.S.C. § 922(g)

Brown also argued that his counsel was ineffective in advising him that he could receive six years on each of the § 922(g) counts in the indictment because he could not be convicted of both counts without a double jeopardy violation.  (DN 226-1, at PageID # 1155-56.)  In response, the United States "concedes that the two § 922(g)(1) counts should have merged at sentencing," though it did not concede that Brown was procedurally entitled to relief.  (DN 243, at PageID # 1210, 1212 n.1.)  Nonetheless, the United States requested that "in the interest of justice, that the Court vacate one of Brown's § 922(g)(1) convictions and refund the special assessment associated with that count," if Brown paid the same.  (*Id.* at 1212 n1., 1213.)

Generally, the government has broad discretion to conduct criminal proceedings, including to select what charges will be brought against a defendant.  *See, e.g.*, *Ball v. United States*, 470 U.S. 856., 859 (1985).  However, where an indictment suffers from the problem of multiplicity, i.e., it charges a single offense in multiple counts, the indictment may improperly "result in a defendant being punished twice for the same crime" in violation of the double jeopardy clause. *Swafford*, 512 F.3d at 844.  Absent a showing that "the firearms were stored or acquired at different times or places," a defendant cannot properly be convicted and sentenced for multiple violations of 18 U.S.C. § 922(g).  *United States v. Rosenbarger*, 536 F.2d 715, 721 (6th Cir. 1976); *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990); *United States v. Adams*, 214 F.3d 724, 728-29 (6th Cir. 2000).  This is because "Congress intended the 'allowable unit of prosecution' to be an incident of possession regardless of whether a defendant satisfied more than one § 922(g) classification, possessed more than one firearm, or possessed a firearm and ammunition." *United*

*States v. Richardson*, 439 F.3d 421, 422 (8th Cir. 2006). Thus, multiple punishments imposed in violation of this intent would violate the double jeopardy clause. *See Pandelli*, 635 F.2d at 536. The usual remedy where a defendant has either pleaded guilty to or been convicted of a jury of multiplicitous counts is merger of the convictions at sentencing. *See Maxwell v. United State*, 617 F. App'x 470, 475 (6th Cir. 2015).

Here, the United States has conceded that Brown's two § 922(g) counts should have merged at sentencing. (DN 243, at PageID # 1210-11.) However, because Brown did not bring a substantive claim regarding his convictions but rather an ineffective assistance of counsel claim, the operative question is not whether the two counts should have merged but whether Brown's counsel's failure to advise Brown on this issue in advance of his guilty plea constituted deficient performance. The fact that an argument regarding merger of the convictions would have been successful if made by counsel is not dispositive of the question of deficient performance. "The crux of an ineffective assistance claim is not simply whether trial counsel neglected to press a viable legal argument, but whether counsel's failure to do so was objectively unreasonable under the circumstances." *United States v. Weathers*, 493 F.3d 229, 234 (D.C. Cir. 2007). Here, in view of the circumstances, the undersigned finds no legitimate strategic reason for counsel to have failed to advise Brown prior to his entry of a guilty plea regarding the possibility that the two counts could have merged at sentencing such that Brown faced a lesser statutory maximum penalty than that of which he was advised. This information would have been pivotal to Brown in making a determination of whether or not to enter a guilty plea because it would have affected his total potential punishment. Accordingly, the undersigned finds the deficient performance prong satisfied.

As to prejudice, the United States argued that there is no prejudice to Brown because his sentences for both § 922(g) counts were imposed concurrently. (DN 243, at PageID # 1211-12.) The undersigned finds this argument unavailing. In Brown's case, it is not just that his two sentences should have merged instead of being imposed concurrently, it is that the two § 922(g) counts themselves should have merged resulting in one *conviction*. As the Supreme Court has explained,

> The second conviction, whose concomitant sentence is served concurrently, does not evaporate simply because of the concurrence of the sentence. The separate *conviction*, apart from the concurrent sentence, has potential adverse collateral consequences that may not be ignored. For example, the presence of two convictions on the record may . . . result in an increased sentence under a recidivist statute for a future offense. Moreover, the second conviction may be used to impeach the defendant's credibility and certainly carries the societal stigma accompanying any criminal conviction. Thus, the second conviction, even if it results in no greater sentence, is an impermissible punishment.

*Ball v. United States*, 470 U.S. 856, 864-65 (1985); *see also Rutledge v. United States*, 517 U.S. 292, 302 (1996) ("Under *Ball*, the collateral consequences of a second conviction make it as presumptively impermissible to impose as it would be to impose any other unauthorized cumulative sentence."). The United States' citations to *United States v. Dunn*, 269 F. App'x 567, 674 (6th Cir. 2008), and *United States v. Mann*, 195 F. App'x 430, 435 (6th Cir. 2006), are thus distinguishable as neither addressed the potential consequences of a second conviction as opposed to merely a concurrent sentence.

For these reasons, the undersigned finds that Brown was prejudiced by counsel's failure to advise him about merger and double jeopardy implications of his two § 922(g) counts. As Brown has demonstrated both deficient performance and prejudice, the undersigned will recommend that Brown's § 2255 motion be granted in part in that the Court vacate one of Brown's convictions

under Counts 4 and 5 of the indictment and refund one of Brown's $100 special penalty assessments if Brown paid the same.

### 2.     Ineffective Assistance – Guidelines

Brown also argued that his counsel was ineffective because counsel failed to actually explain Brown's projected guidelines range and instead advised Brown that he would receive an approximately six-year sentence.  (DN 226-1, at PageID # 1157.)  Brown represented that had counsel advised him that his applicable guideline range was "within 10 months of the maximum penalty, [he] would not have entered the guilty plea."  (*Id.* at 1160.)

As part of the process of deciding whether to accept a plea bargain or enter a plea, a criminal defendant should be able to expect his or her attorney to explain his or her potential sentencing exposure, including "the ranges of penalties under likely guideline scoring scenarios."  *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003).  However, where a defendant contends his counsel provided ineffective assistance during plea bargaining or negotiations, the defendant "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence."  *Pough*, 442 F.3d at 966 (quoting *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005)).  Brown's § 2255 motion falls far short of this standard. Though Brown now contends that his counsel failed to "go over the potential guidelines in detail," he does not contend that his counsel failed to discuss Brown's potential sentence exposure at all or that his counsel failed to investigate his case and make a good-faith estimate of his sentence. (DN 226-1, at PageID # 1160.)  Instead, as Brown confirmed in response to questioning by the Court at his change of plea hearing, he and his counsel did discuss "the advisory sentencing guidelines and how they may apply to [his] case."  (DN 64, at PageID # 305.)  Brown falls far

short of demonstrating what specific deficiencies there were in his attorney's explanation of the guidelines or preparation of Brown's estimated sentence.

Instead, Brown contends that his attorney improperly advised him that he would receive a six-year sentence. (DN 226-1, at PageID # 1157.)  However, Brown was informed by Court during his change of plea hearing that it was the Court, not Brown or his counsel, who would determine what his advisory guidelines range would be and who would determine his sentence. (DN 64, at PageID # 306.)  The Court also advised Brown regarding the potential maximum penalties, and Brown testified that he understood the same. (*Id.* at 303-04.)  The Court even emphasized to Brown that no one else could promise what the Court was going to do with regard to his sentence:

> The Court:     Okay. Do you understand no one can make a promise that binds the court? In other words, your attorney or anybody else can't make a promise to you that's going to – that binds me to do what they say. Do you understand that?
>
> Brown:          Yes, sir.

(*Id.* at 306.)  In view of this discussion and Brown's responses during the plea colloquy, the undersigned finds that Brown cannot demonstrate that he was prejudiced by his counsel's recommendation of a specific sentence. *See United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea."); *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016).

Therefore, the undersigned recommends that Brown's § 2255 motion be denied as to his ineffective assistance of counsel claim regarding advice about his potential guidelines exposure and likely sentence.

3.    *Rehaif*

Brown also argued that his § 922(g) convictions should be vacated based on the United States Supreme Courts' recent ruling in *Rehaif v. United States*.[2]  Specifically, Brown argued that his § 922(g) convictions cannot stand because "at no time could he have intelligently known that he had to have knowledge of his status, in that, as far as he was concerned the Second Amendment permitted him to possess a firearm."  (DN 247, at PageID # 1232.)

In its response, the United States argued that Brown procedurally defaulted his argument because he failed to raise the same on direct appeal.  (DN 250, at PageID # 1244, 1247-48.)  A defendant is deemed to have procedurally defaulted an issue that could have been but was not raised on direct appeal absent a showing of "cause" and "prejudice" or that the movant is "actually innocent."  *Bousley*, 523 U.S. at 621.  As the United States observes in its response, Brown did not file a direct appeal and, thus, has procedurally defaulted on this argument.  Brown's supplement does not even attempt to demonstrate cause or prejudice to overcome the default.

As to actual innocence, Brown's supplement asserts that he is "legally innocent" of the § 922(g) counts and emphasizes that "there is no evidence that can be shown to establish that Brown had the requisite state of mind for the Government to obtain his conviction."  (DN 247, at PageID # 1233.)  Brown's argument about his innocence appears to be based on a fundamental misunderstanding regarding the holding in *Rehaif*.  In *Rehaif*, the Supreme Court held that "in a prosecution under 18 U.S.C. § 922(g) and § 924(a)(2), the Government must prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm."  *Rehaif*, 139 S. Ct. at 2200.  Therefore, *Rehaif* does not

---

[2] While this claim was not included in Brown's initial § 2255 Motion, Brown filed a motion to supplement his petition. (DN 247.)  The United States did not oppose or file a response to Brown's request, and the Court ultimately granted the same, allowing the United States additional time to file a response to Brown's new argument.  (DN 249.)  The United States has since filed its response.  (DN 250.)

stand for the proposition that the United States had to show that Brown knew a convicted felon could not possess a firearm, only that Brown knew of his prior conviction.  Knowing one's status is different than knowing that the status prohibits one from possessing firearms under federal law. As the Sixth Circuit explained in *United States v. Bowens*, 938 F.3d 790, 797 (6th Cir. 2019), "*Rehaif* did not graft onto § 922(g) an ignorance-of-the-law defense by which every defendant could escape conviction if he was unaware of [§ 922(g)]." Here, Brown admitted at his change of plea hearing that he had previously been convicted of a felony.  (DN 64, at PageID # 307.)  Thus, the undersigned finds that Brown's attempt to show actual innocence to overcome his procedural default has failed.

The undersigned recommends Brown's § 2255 motion be denied as to the argument added in his supplement (DN 247).

### C.    Evidentiary Hearing

Though "a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light," the undersigned finds that there are no factual disputes requiring an evidentiary hearing on Brown's § 2255 motion and that the record conclusively shows that he is not entitled to relief.  *See Smith,* 348 F.3d at 551 (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)).

### D.    Certificate of Appealability

The final issue is whether Brown is entitled to a Certificate of Appealability ("COA") pursuant to 28 U.S.C. § 2253(c)(1)(B) on any of the grounds raised in his § 2255 Motion.  An appeal from a denial of a § 2255 motion may not proceed unless a judge issues a COA for the claim.  28 U.S.C. § 2253(c)(1)(B).  To obtain a COA when the Court rejects a defendant's claim on the merits, the defendant must demonstrate that reasonable jurists would find the Court's

assessment of the constitutional claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The defendant need not demonstrate the claim will prevail on the merits; he or she need only demonstrate that the issues he or she seeks to appeal are deserving of further proceedings or debatable among jurists of reason. *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)); *Slack*, 529 U.S. at 483-84. To obtain a COA when the Court rejects a claim on procedural grounds, the defendant must demonstrate (1) that "jurists of reason would find it debatable whether the [§ 2255 motion] states a valid claim of the denial of a constitutional right" and (2) that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 478, 484. The Court need not conduct the two-pronged inquiry in the order identified or even address both parts if the movant makes an insufficient showing on one part. *Id.* at 485.

As to those claims rejected on the merits, the undersigned finds that Brown has not demonstrated that reasonable jurists would find the undersigned's assessment of his double jeopardy argument regarding Counts 6-8 of the indictment or his ineffective assistance of counsel claim regarding his counsel's advice about Brown's potential sentencing exposure debatable, wrong, or deserving of further discussion. As to Brown's procedurally defaulted argument, the undersigned finds Brown has not made the required showing for a certificate of appealability on this issue given Brown's misreading of *Rehaif*.

Accordingly, the undersigned recommends that a certificate of appealability be **DENIED**.

## III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that Brown's § 2255 Motion (DN 226) be **GRANTED IN PART** and **DENIED IN PART**. The undersigned recommends Brown's § 2255 motion be **GRANTED** as to his ineffective assistance of counsel

claim regarding the double jeopardy clause and his § 922(g) convictions and recommends that the

Court vacate one of Brown's convictions under either Count 4 or 5 of the indictment and refund

the associated $100 special penalty assessment for one of the convictions, if Brown paid the same.

The undersigned recommends that Brown's § 2255 motion be **DENIED** as to Brown's remaining

claims.  The undersigned also recommends that a Certificate of Appealability be **DENIED**.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:      *Pro se* Defendant/Movant, Counsel of Record

        April 21, 2021

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the
Court the instant findings and recommendations.  A copy shall forthwith be electronically
transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after
being served, a party may serve and file specific written objections to these findings and
recommendations. Fed. R. Crim. P. 59(b)(2).  Failure to file and serve objections to these findings
and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v.
Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).